We're going to turn now to 25-156 United States of America v. Mana Sambola. And I understand we have Mr. Egan for the appellant and AUSA Rothenberg for the appellee. We'll let you all get up here and get situated. Whenever you're ready. Good morning. James Egan for Mana Sambola. May it please the court. The district court erred in applying the four-level in connection with enhancement of 2KT.1 for one simple reason. The relevant firearm was not in Mr. Sambola's presence during the commission of any of the three alleged offenses upon which the district court relied. Can I ask you to indulge me and to take a step back and address the government's argument about mootness? You can have time. Believe me, you can get back to the merits. But I am curious if you would mind addressing that issue first. Of course. So what I've seen from this court, there's really two lines of mootness analysis in these kinds of cases. That is where a defendant has completed serving the challenged prison sentence but still has remaining time on a supervised release term. The one line says that as long as there's remaining supervision left, it's not moot. And that's expressed. Well, I'm not sure that there's two lines. I think there's some cases where we've just, I mean, there's a line where we have given our detailed explanation of the case law, which means that it's not moot if there's more than a remote and speculative possibility that the court would impose a reduced term of supervised release. There are other ones where we've sent it back, but that's just been like a, I mean, our discussion was very brief. And I don't know that you're, are you suggesting that we have two unreconciled lines of cases that we need to go en banc to resolve? I don't think you have to in this case because I think it's resolvable in our favor under either. Yeah, so why don't you do that? Why don't you tell us why there's no remote and speculative? Sure. Well, there's more than a remote and speculative possibility. Well, yeah. So that phrasing, let's take that phrasing, which first appears in Blackburn, the 2006 case. The language is that the possibility of the district courts imposing a reduced term of supervised release on a remand is so remote and speculative that any decision on the merits of his claims would amount to a declaration on principles of rules of law, which cannot affect the matter of the case before us. Right. Okay, sort of an advisory opinion. So I guess the question here, let's just cut to the chase, is when the district court sentenced your client, gave 21 months, he had already been in for 16. He only effectively had two more months to serve for good time credits, right? For good time credits, sure. Or was it not good time credits? I believe they were, yeah. He ended up serving 18. He was sent to 21. The only way you get there is through good time credits. Yeah, but he was only locked up for another two months, right? On the prison sentence, yes. Well, what else was he locked up for? Well, he's been in immigration detention since. Oh, oh, oh, oh. Oh, actually, that was a side note. He hasn't been deported or anything. I did want to ask that question about his status. Yeah, I've conferred with my colleague who's told me that we have no information that he has been deported. Our understanding is that he remains in immigration detention and still in the removal proceedings of that.  And that's all I know. Okay, fair enough. How does that intersect with the supervised release question? Does he not serve the supervised release until he's released from that? That's correct. If he is, or is— It doesn't start until you're at liberty, and you're free of detention, I guess I would say, yeah. So he has been detained on the prison sentence first, and then transferred to immigration custody. So he's not begun his term of supervised release. So the supervised release might be entirely theoretical if he's— It might be if he is deported at that point. But I guess that doesn't necessarily—I mean, I guess you would say for the mootness question, it's not whether he's going to serve the term, but whether the position court might modify the term. That's correct, yes. Because it still is something that was imposed on him. Yeah, I think this case, the court's decision, Matza al-Aluf says that as long as you haven't been deported, your case is still live. So go back to the—assuming that the immigration situation doesn't alter, we have to decide. I guess the question would be, and I guess this is the argument for the government law, the judge must have been well aware that your client was only going to serve a very short amount of time in prison. One way or the other, beyond the time already served. So why, in light of that, do we think there's any likelihood that if the judge had thought, well, he's not going to serve two months, he's going to serve the time served, she wouldn't have just given him the full three years of supervised release anyway? I mean, realistically, as a practical matter. Really, she would just say, oh, I think I'm going to give you two years and 10 months? So if he served 16 months, he had potential five months left to serve on that, right? So that's five months. It's not nothing. But in reality, it was two, but okay. But again, I mean, we're trying to ask realistically— That's self-speculative, right? What is he going to serve on a 21-month sentence? Okay, he could have misbehaved in the last two months, I guess you're saying. So the good time credits didn't vest until the end. Or whether they would actually be appropriately applied. The point is, doesn't the immigration detention also factor into this, though, in the sense that at the time sentences imposed, I think most judges are thinking something like, okay, how old is this guy? How likely is he to reoffend? For how much time in total do we want him to be under some kind of government supervision? And how much of that needs to be imprisonment and how much can be—we can deal with it through supervision after he's released. Now, besides that two months, by the time this case gets resolved, he will have also spent another year approximately in immigration detention, maybe longer. How does that factor into the possibility that the district court might think— Every imposition of supervised release is looking into the future, and sometimes the far distant future. Here it's not that distant. But when it turns out to be more distant than normal because this person is actually in custody and under government supervision, to whatever extent he ever gets to be on supervised release, why is there not some reasonable possibility that looking at the totality of the circumstances, the judge might think, well, maybe to give him another almost two—another three years, is it? Another three years of supervision, that's a lot more than I thought he was going to in total spend in government supervision when I imposed the sentence. I guess really it's just a judgment call, right? Is that remote and speculative or does that cross a line into not so remote and maybe a little more plausible or something like that? Yeah. I mean, I think I understand your question. You're pointing towards finding that's not moot because the calculation has changed now since the prison sentencing, right, because he served additional time in immigration detention. He may serve yet more. I think that what we're kind of getting at, I think, was Judge Sotomayor's dissent in Blackburn was we're talking about is really like harmless error. We're not talking about mootness. We're trying to guess whether—what effect this error has on the calculation. And I think the remote and speculative is really about is he going to be in a proceeding in which this issue will come up and will it have any effect on that proceeding? And that's really like the parole, like the— Right. So in those prior cases, there's something at the sentencing hearing where the district court says, I think it's important that you serve a term of supervised release because you need the supervision or the program or whatever. So there's no reason to think that even if the prison sentence were defective, that there would be a reduction in supervised release. But you don't have that here, right? So the district court here spends a lot of time justifying the 21-month sentence but doesn't say specifically that you need to have a term of supervised release. And if the district court learned that actually it was erroneous to apply the 21 months, it should have been shorter. Maybe the district court will say, well, I can't turn back time, but I can relieve you of some amount of supervised release. That's the argument. And I think I would—I think this may be interesting to you because I think you wrote a case recently, Simons, in which you found the case was moot. I think because the defendant in that case was making a tapia-based, like, rehabilitation argument that his prison sentence was too long because the court improperly considered rehabilitation. But that would be an appropriate consideration for supervised release, right? So that's probably why that was moot in that case. I don't necessarily agree with that analysis, but I think that distinguishes at the very least this case from that, right? And just to be clear, this is I think not something that we have said to take into consideration in this context, and maybe that's the end of the story. But isn't it true that after a year on supervised release, a district court is free to terminate supervised release if they think the person is behaving well or basically for any reason? Is that correct? I know that has never stopped us from then saying, as we have, that, well, no, but up front, sort of ex ante, we can do the—we can do a remand to the district judge to discount it. But I've always wondered why we bother with that, considering that district courts have extraordinary latitude once supervised release is underway to make all the adjustments that they want as far as going after a year, just terminating early. And they could take this into consideration. So I've always wondered, why do we front load this? Because in this case, the basis for reducing the supervised release term is the error, but the district court doesn't think it's an error. So it's only an error if this court finds it was an error and remands to— Can I ask about the merits of the— Yeah, I think we need to keep you there. If I could just add one more question that's sort of tangential to this, and then I will leave mootness alone. And I apologize for going back to the immigration question, and perhaps the government has more information on this. But you say he's detained. We don't know if, when he'll be removed. But can you just give us some sense of the status? Is he contesting removal? Are they just waiting for travel documents? Is he applying for asylum? What's going on? I can only—I have only said what I know, which is that I have been unable to communicate with him. And I've been shared—my colleague has shared some information with me. Why don't I just ask the government then that question, perhaps as background when you start. But that's fair. You can only tell us what you know. As long as we're on immigration, just one last point on this. The PSR follows the defendant or the alien into the immigration proceedings as well. So this might affect his immigration— So you're saying that if it had the district court's findings are somehow reflected in the PSR? In the PSR in terms of the enhancement, right? So the finding that it was in connection with, that could be a basis. So you're saying that district court—it's not so much the sentencing findings, but it's adoption of the PSR's finding? And if it adopts the PSR, that follows and that could be a collateral consequence? Well, the thing that we're contesting is the application of that enhancement. So the removal of that enhancement from the PSR may be of some benefit to the government. But it would not change the facts in the PSR, right? Nobody's contesting the facts of what he did. No, it's just that finding about in connection with. But I guess I'm not aware of there being any immigration consequence to a particular application of a sentencing guideline. I'm not either. I just know that the PSR especially states on the first page that it can be used in an immigration proceeding. And that, to the extent that it does, I can't say. Okay, fair enough. Thank you for clarifying that. So can I ask about the merits of the question? So I agree with Justice Scalia in Smith v. United States that you're not usually done in the commission of a crime if you use it as currency, right? Right. And so if I agree with that, I might agree with writing on a blank slate, I might agree with you that using a gun as currency doesn't facilitate another offense. But when the Sentencing Commission adopted the application note that gives us the thing about whether the firearm facilitated the other felony offense. Yeah. It says expressly, and it reproduced its explanation in the Guidelines Manual, the amendment adopting language from Smith v. United States provides that application note 14, that provisions apply if the firearm facilitator had the potential of facilitating another felony offense, right? So why isn't that that I should understand the phrase facilitating or have the potential of facilitating another felony offense to have the meaning that the Supreme Court gave it in Smith v. United States? And the Supreme Court pretty clearly said that when you use a gun as part of an exchange, as a medium of exchange, it does facilitate the offense. Because Mr. Sambala didn't use the gun. He didn't possess it. But he did possess it, right? He came into possession of it. Right. And it facilitated the offense because it was used as the medium of exchange. Right. So a few points, if I may. So first off, we have the purpose of the enhancement expressed by several courts of appeals. I don't know about this one yet, one way or the other. But it does say that the purpose is to increase punishment for a defendant who commits a separate felony offense that is rendered more dangerous by the presence of the firearm. Secondly, in the application note you just talked about, Judge Menaschi, 14b, it gives the example of a burglary, which the defendant finds and takes a firearm in the course of committing a burglary. The commission says that that firearm can then trigger application of the enhancement, not because he committed an offense to acquire the firearm, rather because that firearm now in his possession could be used in furtherance or to facilitate another felony offense. So why are you saying that that supports your position? I mean, I thought that your position was kind of attractive to say, well, if he's just trading guns to get a gun – I'm sorry. If he's trading drugs to get a gun, like he's not really using the gun or even possessing the gun to facilitate the drug transaction. He gets at the end of the transaction. But if the sentencing commission thinks that, like, if you acquire the gun in the course of a drug offense, you should still get the enhancement because you might commit a further offense. That rationale seems to apply squarely to this circumstance. No, because – He acquired a gun in the course of a drug offense. He might use it to commit other offenses. But it's not applicable because he committed that first offense. It's because he now possesses it and can use it for another offense. In this case, while he's in the course of committing that burglary. Yeah, the burglary example I thought – exactly. Your point is that in that case, he takes the gun. He still has the gun for the remainder of the term of the burglary. And so it has the potential. Even if he took the gun thinking, oh, this is great, I can sell it, or he took the gun thinking this will facilitate my drug business on the side, that's different than he has the gun now in the course of the burglary. Right. But isn't the most obvious answer to the question that Smith is the flip side of this? In other words, while to say – it's not what we usually think of as using a gun during a crime. We usually think it's waving it, brandishing it, threatening people with it, et cetera. But if I use it as the equivalent of money, I'm still using the gun to get the drugs. But here he's using drugs to get the gun. So maybe somebody else, maybe the store purchaser is somehow using the gun in connection with some other narcotics transaction.  But the argument – I thought your argument was that Sembola is not using the gun in this transaction. Right. He's using the drugs in this transaction to get a gun. That's correct. Yeah. He doesn't have to use the gun, right? He only has to possess the gun. That's correct. So that's the distinction Smith walks in, right?  But if he's possessing the gun, then wouldn't it be the case that any time you purchase a gun illegally – Right. – you get the enhancement because you possess the gun at the end of the transaction that is illegal? Right. And I think the reason that that's not how the Sentence Commission wants this to apply is because more recently, in 2003, they adopted a new kind of language that ties into 933, the new offense of receiving a firearm unlawfully basically, which is kind of a – So you're saying that if, in fact, your client had used – had given the gun in exchange for the drugs, he would have possessed or used it to facilitate the drug transaction. I think he would have used it. Because he gave the drugs and not the gun? He did not? I'm sorry? I mean it seems to me in both cases, regardless of the direction, the gun is being used as a medium of exchange. So either that facilitates the drug transaction or it doesn't. Why does it matter which side used it as the medium of exchange? Because the – what? The pronoun? He used the gun, right? He possessed the gun. Yeah, but it only has to be possessed, right? So in both cases, if there's a medium of exchange, each party is going to possess it at some point, right?  So the question is whether the gun facilitated the crime or had the potential to facilitate the crime. And I – as I said before, I might agree with you based on ordinary meaning, but if what I'm doing is interpreting Smith v. United States, it seems inescapable that the Supreme Court thought that using a gun as a medium of exchange facilitates a drug transaction. Yeah, but that's the inverse situation. I think that's the importance, right? Is the – are you – if you're using the gun – Okay, so let me just separate these things out. Okay, so we have use or possession on the one hand, and then we have facilitates or has the potential to facilitate. Right. So do you agree that if I'm interpreting that phrase, facilitating, the way the Supreme Court did in Smith, then when you use a gun as the medium of exchange in a drug transaction, that is facilitating the crime? The crime of – The drugs. The drug distribution. That's what the Supreme Court says, right?  Okay, so then we have facilitating. So the only question is whether use or possession is satisfied, right? Mm-hmm. Okay, so you're saying, well, if he's the one who used the gun as the medium of exchange, he definitely would have used it. Right. He's receiving the gun. He's not using it. I'm not sure that's even true because he is receiving it as a kind of medium of exchange, but doesn't have to use it, right? He only has to possess it. So doesn't he come into possession of the gun as part of the transaction? What's interesting is, like, the gun is really notional here. Like, it's not – it's really actually in the store, and what's really being – the drugs are being used is to induce the strong purchase. And the gun then is really, like – it's not part of the – But he wouldn't have given the drugs if he didn't have the expectation of receiving the gun. Sure. It was his expectation. So if the Supreme Court tells me that using a gun as a medium of exchange facilitates the drug transaction, I think I – it's unavoidable. And you just agreed that that role of the gun facilitates the transaction. So the only question is use or possession. I mean, do you dispute that your client possessed the gun? He possessed the gun on completion – like, once the crime was over, he possessed the gun. His possession – the question is not did he possess the gun, but is – did his possession facilitate the crime? Does that mean that it matters who hands over the gun and who hands over the drugs first? Yes, I think so. So if the strong purchase happens first, in your view, and the gun is handed to your client, and then he hands over the drugs, then his possession facilitated the drug offense? Well, that would be a closer case. No, I'm asking. I know. But you're saying that if the other way around – so you've got the strong purchaser who comes back from the store, and he's got the gun in his hand. Right. And your client has the drugs. And they say, OK, we have a deal here. And they say, yeah, we've got a deal. If one of them hands over the gun first, now we have your client possessing it in furtherance because maybe he would hold on to the drugs, right? Maybe he would say, well, I'm not going to hand over the drugs until I get the gun in my hand. Now we've got – we trigger the enhancement. But if he says, no, no, no, I trust you. I trust you. Or I know you're scared of me. You'll never decline to turn it over. And here are the drugs. Now you're saying the transaction is – the distribution is done, and then the payment that comes afterwards is not part of the distribution. It's just sort of a happy ancillary act because that seems like it's creating a very strange – everything depends on the fortuity of time. Right, and I think the way out of this is really just to go back to the purpose, which is to enhance an offense where the crime is actually being used to make that – where the firearm is being used to make the crime more dangerous. So I agree with that. As I said at the beginning, I think Justice Scalia was right, but Justice Scalia was in dissent, right? The sentencing commission is – we're giving the phrase facilitating the meaning that the majority of Smith v. United States assigned to it, right? Not the Scalia opinion. So the notion that when you say facilitate, it only has to be that you're using the gun the way it's intended to be used as a weapon that makes the crime more dangerous. That is not the meaning it has because that's not the meaning that the majority in Smith gives it, right? That's just the use problem, right? Not possession, right? So that's the difference. Well, they also say that it was facilitating or had the potential to facilitate, right? The use, right. Yeah, not the possession. Smith isn't dealing with possession, right? It's just about use. It's just about use, right? But the phrase facilitating or had the potential to facilitate, that comes from Smith. They're describing why you get the enhancement in that case. Okay, fine. I understand. They're talking about use. But they're saying that use of a gun as currency facilitates the drug transaction. That's what the majority says in Smith. In Smith, right. So the word facilitates, if we take that for granted, must mean that using the gun as currency does facilitate the drug transaction. And the only remaining question is whether your client possessed the gun. You're saying, well, he didn't possess it until after the thing was over. I don't know if that's true. It might be that the drug transaction is not over until all of the pavements change hands. So I don't even know if that's right. But then it leads to the oddity that Judge Nardini pointed out, which is, well, he had given the gun first and then got the drugs, then he would possess it. But since he gave the drugs first and then got the gun, he doesn't possess it. That seems arbitrary. Yeah. I mean, isn't that a problem with your particular formulation, which seems to be hung up on the temporal quality? And that gets you into the problem that Judge Nardini asked. But in the real world, is there any sense in which the gun made it easier for Zambola to sell drugs? He's selling drugs. He would have sold it. If the straw purchaser had wanted to buy the drugs, Zambola would have sold it to him. He doesn't need the gun to make this drug transaction happen.  He wants the gun. Well, in fact, he pays for the gun. He uses the drugs to get a gun. That's what's going on here. And it's hard for me to see how this facilitates his narcotics business. Right. He's got drugs. He happens to use the drugs as a medium of exchange, as a substitute for money.  But the gun is just the object of what he's looking for. It's not something that facilitates in real life the drug transaction. Now, Smith talks in broad terms about medium of exchange, but the actual facts, the actual holding of the case, is indeed a case in which the possession of the gun makes it possible for the buyer to get the drugs. Right. And this seems to me to be not covered by that. Now, I don't know what – the Supreme Court has not had occasion to consider the inverse case. I don't know whether we're the first to consider how the Smith case applies to that in the context of a sentencing guideline, which seems to have been adopted to get the facilitation notion in there that wasn't in there before in the guideline.  Right. Which is – and the burglary example, too. Yeah. And it's just – I mean, so the sentencing commission amended this guideline in 2023 and added kind of the situation we're talking about, which is where a defendant induces another to transfer to him a firearm. And in that case, you add two levels, which – But I really don't understand. I mean, I kind of – I think I agree with the way Judge Lynch described it because, as I said, I agree with Justice Scalia from Smith. But again, Justice Scalia was in dissent. So couldn't you say a similar thing about the majority position in – in fact, that's what Justice Scalia says, the majority position in Smith. Like it doesn't – like he's not really using the gun to effectuate the drug transaction. He's trading the gun for drugs. But, like, if he had money, he could have used money. It just happens to be that the drug dealers want the gun. Right? So that argument could be deployed against the majority in Smith, too. Right? But the Supreme Court told us that when the gun is being used as the medium of exchange, it's facilitating the transaction. By the person who possesses it, who is offering – who is engaging. If using it as currency facilitates the transaction, why does it matter which side of the transaction it's on? Well, it – well, it matters for purposes of the guideline because the guideline is an enhancement to a firearm possession. Right. So then I read the guideline. So subsections B6b and C1 apply. If the firearm ammunition facilitator has the potential to facilitate another felony offense. Right? And then I know from the Sentencing Commission that that phrase about facilitating has the meaning given to it in Smith. So if it's used as a medium of exchange, then it facilitated. Then the question is did the defendant use or possess the gun? Do you deny that your client possessed the gun? No. Okay. So then aren't both of those requirements met, that it facilitated the drug offense and it was possessed by the defendant? No, because it facilitates – like the firearm was possessed by the store initially. It was obtained by the straw purchaser through the straw purchase and then given to the defendant, not because the straw purchaser wanted to engage in this action. From the perspective of the defendant, it didn't matter what the medium of exchange was. I mean, is that really true? I mean, he just really wanted this gun. So he went out of his way to give the other guy a bunch of drugs in order to get it. Maybe if it was money, he wouldn't have been as excited about it. Like he – like doesn't it facilitate it even more if we know that the person dealing the drugs really wants the gun and that's what's motivating him to engage in the transaction? Like doesn't that make it worse than if he just happens to luck out that he finds a drug dealer who wants his like – a gun that he happens to have and so he can trade that instead of using money? In this case, the drug dealer was motivated to engage in a drug transaction because he really wanted to receive a gun, to receive and to possess a gun. Well, according to the straw purchaser, he was an addict who was sort of desperate to obtain drugs or cash. It would probably be easier – I mean the defendant gave cash for the gun and it's probably cheaper to give him drugs, right? I mean that would be the only reason to do it according to this – I mean even if this never happened. Well, obviously the defendant contests that – I understand it's cheaper, but it wouldn't have been a drug crime, so maybe he shouldn't have used money. I mean I don't – I don't understand what that – the implications are for that. Like he did in fact use drugs, right? But his continued possession of the firearm going forward is not aggravating by the fact – by how he obtained it. And I think that's what the commission is really getting at is the way that you acquire the firearm doesn't matter. I mean you're saying what the commission was getting at. Yeah. And like I agree with you that if I was just looking at this language by itself, I probably would not say that the use of a gun as currency facilitates the drug trade. But the commission has told me what they're getting at, and they said when they amended this guideline that it adopted the language from Smith v. United States. That's – it has the meaning of facilitate that the Supreme Court assigned to that phrase in that case. And in that case, they did say using it as a currency facilitated the drug trade. Did the commission say all that or did it just say – Yeah, so I'm looking at the reasons for the amendment. It's Amendment 692, November 1, 2008. The amendment addresses a circuit conflict pertaining to the application of current 262.1b5, re-designated by this amendment and so on, with respect to – or specifically with respect to the use of a firearm in connection with burglary and drug offenses. The amendment adopting language from Smith v. United States provides an application, note 14, that the provisions apply if the firearm facilitator had the potential of facilitating another felony offense or another offense, respectively. And that's it. But that's a lot because it's citing Smith v. United States. It's saying –  If you want to understand what we mean by facilitator had the potential of facilitating, you should go look at Smith v. United States, and there's hopefully a citation. It says 508 U.S. 223. Okay, but it's not saying that in the body. It's not really expressly saying that in the reason for the amendment either. And also, it's adopting that burglary example. I understand. I'm looking at this document, and it says reasons for amendment. Yeah. The reason why we are including language about furtherance, because the conflict was about whether a person who obtains the firearm during a burglary, I believe, can – whether the enhancement applies in that situation. Isn't that why this whole thing came up? There was a conflict about that. And they said it does apply because when you get the firearm during the cursing of burglary, you can use that firearm in furtherance. Yeah, but that's a separate thing. It goes on to say, right, it goes on to say, furthermore, the amendment provides that in burglary offenses, these provisions apply to a defendant who takes a firearm during the course of the burglary, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary. So there's a specific region of that burglary. I agree with that, but I'm focused on application of 14A, which talks about facilitator at the potential of facilitating, and the sentencing commission is telling me I need to give that phrase the meaning it had in Smith v. United States. Right, which is where a defendant uses a firearm to obtain drugs. That's a specific example in which Smith arises, and that's the extent that should be interpreted. I don't – unless there's any reason to interpret it more broadly, which the commission has given us no reason to, because if they did, then the burglary example would apply because the defendant committed a felony to get the gun rather than possess the felony during the commission. Well, I don't know if that's true. He might have opportunistically got – taken the gun. Well, that's right. Maybe it's right. Maybe if the whole motivation for the burglary was to get a gun, maybe it would fall under application note 14A. But application 14 – note 14B would apply even if that was not the motivation. He just saw the gun in the course of the burglary. Right, but that was – So that's why you'd have a separate reason to include a separate application note. Right, but we would include it not because we were reading in connection with to its furthest interpretive possibilities, which is that there's some causal connection between the burglary and the firearm, rather in the sort of general direction. I mean you're saying like there – it can't just be that there's some causal connection. I mean if we didn't have the application notes, then we'd rely only on the language of the guideline, which just says user possessed any firearm or ammunition in connection with another felony offense. Right. Like if that's all the language we had, would you deny that your client possessed a gun in connection with a drug trade? Well, in Spurgeon – I mean if he received a gun as part of a drug trade, he certainly possessed a gun in connection with a drug trade, right? Well, in Spurgeon, this court defined that term in connection with – in its ordinary meaning and said basically it doesn't apply where the presence is coincidental. So meaning that the presence – But it's not coincidental. Like the whole object of the drug trade was to receive the gun, right? Yes, but it's not present. So it wasn't like he just happened to have a gun when he engaged in a drug trade. No, but the point I'm trying to make is that the definition requires presence of the firearm. So why don't we do this? You've reserved, believe it or not, two more minutes for rebuttal, so we're not done with you yet. But why don't we hear from the government, Mr. Rothenberg and Mr. Egan. Get a glass of water. Thank you. And perhaps the government could start with some housekeeping matters just to the extent that you have any information reflecting the immigration status or the status of immigration proceedings against this defendant. That would just be helpful if there's something we can take judicial notice of. Yes, Your Honor. Good morning, and may it please the court. Joshua Rothenberg for the government. What I understand from my contact with the Department of Homeland Security is that the defendant has challenged an order of removal. That, as I understand it, has been – that challenge has been denied by the Board of Immigration Appeals and was denied on October 20th of this year. I do not understand that the defendant has yet filed a petition for review in this court. I have much less information about whether or not he has. I want to be very clear. And just – and this doesn't really matter, but would it be with this court? I don't know where he is, where his proceedings have been occurring. So, Your Honor, I'm not sure. Okay. And I actually searched all of the courts of appeals and did not see his name on one.  But, again, it's possible that it just hadn't been picked up yet, so I don't want to – Could I ask you, just as a matter of housekeeping, to file some – oh, it's just a letter brief, maybe consulting with Mr. Egan afterwards. By this Friday, just giving us an update on what the status is, could you drill down and find out? Your Honor, I can drill down and find out. I'll do my best to get it in by this Friday. Of course, if the Department of Homeland Security doesn't get back to me in a timely fashion, I'll let you know. Tell them we would like to know. I will tell them that you want to know by this Friday. And if not, we'll – They don't always pay that much attention to what courts say, I understand.  We're always alleged in other courts. I've not encountered that person. I'm sure that when I tell my contact to the Department of Homeland Security you'd like to know by this Friday, they will get back to me in a timely fashion. Friday at 5 would be very helpful. Whether it winds up being of consequence to a decision, I don't know, but I think it would be just helpful as a housekeeping matter. So anyway, thank you, and I go back to your normally scheduled programming here. Thank you, Your Honor. So we do believe that this case is moot because the defendant has completed the term of imprisonment, which he has challenged. He has not shown any indication in the record why the district court would choose to reduce the term of supervised release, which it decided to impose in order to – Why is it possible just if the district court spent a lot of time justifying a sentence of 21 months, if the district court learns that actually that sentence was not justified and it should have been a shorter term, the district court might say, well, I'm sorry that I gave too long a term of imprisonment. I can make up for it by reducing the term of supervised release. So, Your Honor, it's certainly a theoretical possibility in every case where the defendant is serving a term of supervised release. But I think that what this court has said, for example, in Simmons, is that there needs to be some indication in the record that the district court would actually do that. It can't just be the theoretical power it has, the possibility that it would do that. There needs to be something more. And what in the record – so I could kind of understand a rule that might say if we look at the record and we see the district court actually thought that the term of supervised release was important. Maybe the district court said a lot about how it's important to have supervision because he needs to transition into life or have a job or be monitored or whatever. Then we don't think it's likely the district court is going to reduce the term of supervised release. But if the presumption is there needs to be some kind of affirmative indication that he would like to lower it, why would we expect that to be in the record and what would that look like? Well, Your Honor, I think there's a couple of possibilities. One is if it's tied to the term of imprisonment in some way. For example, if the district court says I'm giving you this term of supervised release because I think you're going to be in prison for, say, five, ten years and you'll need this to reintegrate. I think you might see something like that. But also generally speaking, I think the other thing this court has noted in Simmons and other cases is that the defendant could try to go to the district court and get that indication before coming to this court and saying I want you to issue it. Well, that was more of an after-the-fact thing, right? I mean that was sort of saying like don't be too concerned. We feel bad for you that we're ruling against you. But don't worry. There's another thing out there. That was not part of the rationale because that would be true in every single case, right? Yes, Your Honor. I understand. In which case if we said the possibility of early termination of release is out there and that justifies not sending it back, that would justify it in every single case. Absolutely, Your Honor. So that can't be part of our rationale. I agree it's not part of the rationale. I'm saying that's one way a defendant could try to meet this if the record is completely silent. That does not necessarily mean that it's true in every case that failing to do so would – Could you just point us then – because we have to be concrete, right? What is it that the district judge said in this case, said out loud, that you believe supports mootness, that you believe shows there's nothing more than a speculative and remote possibility of a reduction? Your Honor, I believe it's found on pages 241 to 243 of the record where it's justifying the conditions. And it's explaining the drug treatment, the search, the financial information, and the immigration conditions in particular for this defendant. And it's explaining why those conditions are necessary to rehabilitate this defendant. And I think based on its explanation for those conditions, which include ensuring he complies with immigration authorities, which as I've just noted is an important fact in this case, but also ensuring he gets the treatment he needs, ensuring the supervision is there to make sure he doesn't turn back to drug trafficking, which he has done after having been convicted of drug offenses before, that those conditions together, that explanation indicates the district court did want to keep him under supervision for as long as possible, in this case three years. And we do not think the district court would reduce that if he were to remand. I'm happy to answer other questions on mootness. Otherwise, I'll turn to the merits. Could I ask – we talked about how the judge spent a lot of time justifying the sentence of imprisonment. How much of that was guidelines-driven? That is to say, is there any indication that the judge said – was thinking or said something like – I don't know that I myself would think this is the world's most serious gun-buying offense, but the guidelines tell me that if we dance on the head of the pins long enough, we will come down on the side that says there's a four-level enhancement. And I really need to defer to the Sentencing Commission's view of this, as opposed to something like I've got a guy here who's a young man. He's already a serious drug dealer. He's buying a gun. The only reason I got to think of he wants a gun is so that it will facilitate his future drug dealings. And whether we dance the dance of the head of the pins that we spent 25 or 30 or 40 minutes discussing with Mr. Egan doesn't really matter to me. Now, I know she didn't say that, but did you say anything on the other side either? Is there any reason to think that whether it's an error or not an error to rely on the four-level enhancement, that the appropriate jail sentence for this defendant was anything other than what was imposed in the judge's mind, and that if that's so, why would the removal of the enhancement have a rebound effect on the conditions – the length of the term supervised release? Do you follow what I'm asking? I think I do, Your Honor. So I don't think the judge specified exactly what role the guidelines played in her thinking. She did give a guideline sentence. I would agree, however, that it's unlikely that the judge will ultimately determine that the term supervised release should be shortened, if for no other reason than the amount of time he actually spent in prison is within the guideline range without the enhancement. The 18 months he spent in prison would be within the guideline range if it had been four levels lower. So I think that that, too, weighs in favor of mootness. Yeah, but that's because he got time credits, right? So he did get a 21-month sentence. Yes, Your Honor. But to the extent that it's an equitable matter, he might, as Your Honor says, say, oh, I actually feel a little bad. I might reduce this. I think the fact that it's within the range, regardless of – I mean, if that were the reason why the district court decided not to reduce the term supervised release, it seems to me there's more than a remote and speculative possibility that the district court would do so, because if it came down to that kind of a consideration, it means the district court was considering doing it, right? It's like, well, if you didn't get the time credits, maybe I would reduce your term of supervised release, but you ended up serving a within-guideline sentence, so I don't think I'm going to do it. It would be that the district court was thinking about that. That would mean that this case is not moot, right? Don't we have to have more confidence than that that there's just not really a chance that the term of supervised release is going to change? Your Honor, I think it's part of the totality of the circumstances, but as I said, I think the district court's explanation for the conditions gives you any level of certainty you need here. Turning to the merits, and I think you're going to get questions asking to dig into the merits. But just as a framing matter, I think everyone seems to be in agreement that if Mr. Egan's client had committed this crime a few years later and it were subject to the 2023 guidelines, the newly amended one, he would clearly be getting this enhancement, right? He would be getting the trafficking- Or V-5, whatever it is. Yes, Your Honor. The new version of the guidelines would clearly give him the V-5 enhancement, right? Yes, Your Honor. So whatever we decide here, if we get to the merits, is deciding the applicability of this enhancement within a temporarily circumscribed period of time, right? The enhancement as it existed, I can't remember when it came into play, until November 1, 2023. Thereafter, you're getting a V-5 enhancement. Or is it a lower enhancement, the new one? So, Your Honor, the V-5 was the trafficking-specific offense characteristic. They've now all been re-designated again, but I'm going to stick with 2021-2023 numbering. That was the trafficking. I do not want to concede in this case that it would be double-counting to apply both the trafficking-specific offense characteristic and the specific offense characteristic. Oh, I see, because the V-5 would be two. Well, it could even be four, but it's at a different section. So then there would be a double-counting question. There are double-counting provisions, Your Honor. So it's a little bit more complex. It is a little more complex. I hadn't really looked so carefully about it. Okay. Thank you. Yes. So we do believe the district court was correct here. And just to be clear, the Seventh Circuit also has adopted this reasoning in United States v. Schmidt, which we cite in our brief, that the person who receives a firearm in exchange for giving drugs warrants the application of B-6B, the specific offense characteristic here, because it is the reasoning for the increase. And so we do agree. Let's say we didn't have Smith v. United States. We were just sort of – we just had this language that said enhancement applies if the firearm facilitator had the potential to facilitate another felony offense. I mean, isn't the ordinary meaning of that language that, like, you must be using the gun somehow to commit the offense, not that the gun was a replacement for cash? So, Your Honor, I wouldn't agree with that because I think that the ordinary meaning would include a situation where it is the but-for cause of the offense because it is the motivation for the offense. That is to say – Well, certainly it can't be anything that's the but-for cause, right? Well, where is the motivation? I think but-for and approximate in this case, right? Mr. Sambola wanted this gun. And so he gave drugs to the straw purchaser to get him this gun. Given that, I think that the gun facilitated the drug offense because the gun is why the drug offense happened. And I understand that it's possible Mr. Sambola would have, as he did on other occasions, deal drugs to the straw purchaser in exchange for money. But in this case, that's not what happened. He did give him drugs for the gun. And given that that happened, we do think that it would facilitate the offense in the ordinary meaning. It might be closer where it was a sweet-in-the-pot theory like this court talked about in the United States versus Ryan. And they came to a drug deal and someone was like, oh, I don't have all the cash, but I do have a gun. Maybe that's a closer case. But in a case like this where Mr. Sambola went out of his way to solicit a straw purchase for the pistol and then to exchange drugs for the pistol— Wait a minute. I don't know if I agree with you about the ordinary meaning. But as I said, the Sentencing Commission says that it's adopting this language from Smith v. United States. And certainly it's been court thought that if you use gun as currency, it's facilitating the crime, right? We certainly agree with that, Your Honor. Now Mr. Egan said, well, Smith v. United States was about where the defendant is using the gun as currency, not receiving it. Does that make a difference? Your Honor, I don't think it makes a difference in terms of whether or not the gun facilitated the offense. It facilitated the offense. And we think that in this case, the defendant's possession being the object of the offense, the drug offense that is, the possession of the gun, would still apply here. But, Your Honor, we do have alternate theories in this case, which the defendant did not address. But one of them is— Can I ask you as a predicate to those? Did the district court address any of those? No, it did not, Your Honor. So you would be asking us to affirm for other bases apparent on the record— Yes, Your Honor. —but without having the district court having expressed any views on these at all, right? That's correct, Your Honor. Okay. Well, hey, and none of those theories was anybody discharging the gun or using it as a weapon. Like he asked him to store it and gave him drugs in exchange for storing it. Like that's the idea, right? Yes, Your Honor. So if you were hung up on the notion that when you use a gun for a purpose other than its intended use as a weapon, that's not facilitating the crime. It's not like these other theories would cure that problem. Your Honor, I think that's right, but I do think that the defendant has conceded that the person who possesses the gun at the beginning of an offense where they give it with drugs— Oh, so you're saying that what these other theories do is that they are scenarios in which the possession happened in the middle of the offense as opposed to at the end. Correct, Your Honor. But then would it—I mean, would it really matter whether it happens in the middle or the end? I mean, he did possess the gun as part of the offense, right? Before the offense was complete. So, Your Honor, there's actually two guns here. There's the pistol, which is the gun that is straw-purchased for him. Let's just talk about the pistol for now because I think that's the scenario we're currently talking about. Okay. So the pistol, yes. The pistol he did not possess until the straw purchase is completed and until it is handed to him at the end of this series of transactions where he gives drugs for it. And then he's ultimately given the pistol. And so we do think that that applies. That's the district court's theory. That's the United States v. Schmidt. We do think that is a perfectly fine basis for this court to affirm. The alternate theories look at two other—look at the rifle. No, no. Stay on the pistol. Okay. Because I understand that your flip side on the pistol is, okay, assume the pistol has to be possessed before the distribution is done somehow. Yes, Your Honor. The pistol was possessed by the straw purchaser, and the straw purchaser's acts were induced by the defendant, and that's why they come in through 1B1.3? 1B1.3A1, Your Honor. 1B1.3A1, 1B1.3A1, 1B1.3A1, 1B1.3A1, 1B1.3A1, 1B1.3A1, 1B1.3A1, 1B1.3A1, 1B1.3A1, 1B1.3A1, 1B1.3A1, 1B1.3A1. Is that— That's correct, Your Honor. So that's why you're—and again, the district court didn't— It did not. —say you didn't argue it, but you're saying it's so apparent on the face of the record because these facts are not in dispute. Yes, Your Honor. If we agree with you as a legal premise, then of course the district court would have to apply it. That's this slice of 1A theory. Yes, Your Honor. That's that alternate argument. That's correct. It would be de novo review anyways because it is a pure question of law since those facts are not in dispute, and we believe as a matter of law because the defendant here went beyond simply accepting a gun in exchange for drugs. He set this whole thing up, right? He put this whole ball in motion. This makes him more culpable than the straw purchaser. So is there any difference between the scenario we have here where he induced the straw purchaser to make the straw purchase, to go out and get the gun and all that in order to consummate a drug transaction, and a different scenario where the drug purchaser, you know, he just has a stash of guns, and the drug dealer, the defendant here, says, hey, I'm perfectly happy to accept payment in the form of a gun. I have not induced you to go get the gun. I have not induced you to possess the gun. I am simply inducing you to hand the gun to me. Is that the same thing? We would say the same result in that scenario. I do think it would be different if the drug purchaser said, I don't have the cash, but here's a gun. At that point, the defendant has not induced him to offer the gun. He has offered the gun of his own free will. So I think that's where the line is, is did the defendant make this offense more dangerous? Is the defendant the one who brought the gun in? And in this case, the defendant brought the gun in. It's true he didn't walk into the drug dealer with it. Do you think we need to understand the guideline in terms of who made the offense more dangerous? So, Your Honor, I think that what 1B1.3 is getting at is that when the defendant solicits or induces or aids and abets someone else's conduct, the defendant should be responsible for that as though he personally did it. And you're saying that the defendant simply saying, ah, you have unilaterally and surprisingly offered me a gun instead of money for the drugs, I accept that his acceptance of the offer is not enough to constitute inducement of? Yes, Your Honor. I would think that the difference there would be that it didn't facilitate the transaction because he dealt the drugs expecting cash and only at the very end did he discover he was going to get a gun. Right? I don't want to concede that, Your Honor. I certainly think it would be a different scenario. But I think that it does – it's not a problem in terms of the theory here regarding the defendant's culpability for what he had other people do. But, I mean, it's about who made the thing more dangerous. Like, so if the defendant said I want you to engage in a straw purchase to give me a gun, and that's my motivation for doing a drug trade, but I'm very concerned about safety, so therefore I want you to give it to me in a disabled state in a lockbox where, like, there's no risk that any danger will occur. I'm just engaging in a transaction. Would you say then the enhancement would not apply? No, Your Honor. I would still say the enhancement would apply. So it's not about dangerousness. It's just about whether there was literally a firearm that facilitated the felony offense, right? Yes, Your Honor. It's about whether his possession of the gun in any way facilitates the offense. Would you agree with that? So, Your Honor, I think his possession – It's not just that there is possession of a gun and there is facilitation. It's whether his possession of the gun facilitates the offense. Is that the standard? Or possession that is attributable to him through 1B1.3A1. And that's what facilitated the offense. The possession is still facilitating the offense is your point, right? Right, but in this case, the straw purchaser's possession – Attributable to the defendant. And it facilitated the drug offense, and I don't think the defendant has contested that, but the straw purchaser in this scenario, and I think under this court's – Oh, but wait a second. Now you're saying that the straw purchaser's possession is the relevant possession? Anything that the defendant – I mean, the guideline itself says that the defendant used or possessed any firearm or ammunition in connection with another felony offense. It does, Your Honor. And in Application Note 13, which applies to B5 and not B6 – I want to be really upfront about that – but in Application Note 13, it notes that when it says the defendant, it is including anything the defendant personally induced, aided and abetted, willfully caused, or solicited. And I think the best way to understand it is this. The guideline is very concerned about culpability. If the defendant can say, okay, I didn't do this, I made my guy do it for me, he should not get a break just by making someone else do the more culpable act. That's the problem here. He is saying, okay, maybe I made the straw purchaser go and do a straw purchase. Maybe I made the straw purchaser go and do exactly the thing that we all agree triggers B6b. But since I made him do it and didn't personally do it, I should get a break. I get that argument, but I don't know. I am focused on the language of the guidelines. So we have the guideline that says if the defendant used or possessed any firearm or ammunition in connection with another felony offense. Yes, Your Honor. It doesn't actually say that the possession facilitated it, at least at that point. It says there was possession in connection with. So maybe receiving a gun would be in connection with. Like obviously if you receive it in exchange for drugs, you eventually possess it in connection with the drug trade, right? Yes, Your Honor. And then application note 14A says that that subjection applies if the firearm or ammunition facilitator had the potential of facilitating another felony offense. It doesn't say if the possession of the firearm by the defendant or the use by the defendant. It just says the firearm or ammunition facilitated. And maybe it's written that way on purpose because, as I said, when the Sentencing Commission adopted that language, it was reading Smith v. United States where the firearm might have played a sort of more passive role in the offense than maybe we would expect just interpreting the language on a blank slate. Yes, Your Honor. And we would be perfectly happy if the court held that the district court was right here, that Schmidt is right, and that it applies under those circumstances. I'm simply saying even if you were to disagree with that, there are other reasons to affirm. And I do want to reach the rifle as well because we do believe that the facts in this case that's adopted by the district court when it adopted the PSR indicate that the defendant handed drugs and a gun to someone and said, store this. And, again, at that point, his temporal argument goes away, the possession argument goes away, the facilitation argument goes away. Well, let me ask you this as a procedural matter. I guess there are so many ways we could approach this. The arguments you're making about the rifle in terms of triggering the guidelines were certainly not made to the district court.  If we were to remand, let's say we were to somehow vacate here, we could remand and we would allow, I guess, in your theory, the district court to think about other theories that might be applicable. I suppose at that point the district court could also make a decision on any number of alternate grounds like the mootness issue effectively, not to say it's moot, but saying I need not reach the enhancement issue because no matter how you slice it, I would not reduce the three years of supervised release. Or the other way around and say I would, in theory, sort of Crosby remand idea. If I would be willing to reduce supervised release if I don't think the enhancement is applicable, so therefore I'm going to have to turn and figure out whether any of these other theories apply, right? Yes, Your Honor. Or I suppose if in the meantime the defendant were released, I guess that, I don't know. I guess any number of things could affect what the district court might or might do. Or I suppose the district court might say something, well, actually, you know, like a balustrary thing. Four points or not on the offense level wouldn't have made any material difference to the way I would have sentenced the defendant. And, you know, regardless under Booker of the guideline range, I would do the same thing anyway. I just keep wondering whether we're spinning our wheels here about something that may or may not actually have mattered to the district court. And how do we figure that out other than asking the district court? Well, Your Honor, again, I think you can remand perfectly on the basis the district court said. And so there's no need for this. If you disagree with the district court's basis, we do think for the reasons in our brief, you could on de novo review say as a matter of law based on the facts the district court found that the enhancement applies for the alternate bases I set out. But if you wanted to remand.  Your Honor, I'm not sure what you usually do. I certainly think you have the power to affirm based on any grounds supported in the record. And in this case, with these many factual findings and with these guideline arguments, we think you could reach that question. But if you would prefer to remand to the district court saying you got it wrong, again, we don't think they did. But if you were to find that, you could certainly remand and ask the district court to take the first bite at the apple there. There is one other thing I'd like to briefly address, if I may, which is the straw purchaser's identity. We'd ask the court in its discretion in any order or opinion to use a pseudonym just to protect the straw purchaser from any possible retaliation. All right. We have no further questions. Thank you very much. Mr. Regan, I hope you have recovered. But we will try to keep it to two minutes. I have several things I would say, but most of them are in my brief. So the court has questions. Thank you very much. On both sides, we must say very helpful oral arguments. We thank you both for coming down here today. And we will reserve the decision. Thank you both very much.